**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SUSAN DOUGLAS and PAUL ROMANO<br><br>    *Plaintiffs,*<br><br>v.<br><br>NATIONAL PARK SERVICE, *et al.*,<br><br>    *Defendants*. | Civil Action No. 26-2016 |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER**
**OR, IN THE ALTERNATIVE, AN EXPEDITED PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.    The Court should prohibit Defendants from authorizing the UFC's use of the Lincoln Memorial chamber. ...................................................................................2

        A.    The Court should require defendants to honor the representation in their June 9 briefing that they have authorized the UFC to use only "the approach way" to the Lincoln Memorial, not its chamber. ......................... 2

        B.    Alternatively, the Court should grant a TRO against the use of the Lincoln Memorial chamber. ................................................................................. 5

    II.    The Court should grant a TRO with respect to the UFC's South Lawn event. .......6

        A.    Plaintiffs are likely to prevail on the merits of their claims against the South Lawn event. ................................................................................. 6

        B.    Plaintiffs are likely to establish standing. ................................................ 11

        C.    The UFC is not a necessary party. ........................................................... 13

        D.    The equities favor preliminary relief to halt the corrupt exploitation of national monuments. ................................................................................. 14

        E.    The Court should impose only a nominal bond. ...................................... 18

CONCLUSION ................................................................................................................. 19

i

## TABLE OF AUTHORITIES

**Cases**

*Accountability NOW USA v. Griess*, No. 26-cv-1385 (RDM) (D.D.C. June 1, 2026) ................. 19

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005). ......................................... 13

*Am. C.L. Union of Illinois v. City of St. Charles*, 794 F.2d 265 (7th Cir. 1986) .......................... 17

*Beatty v. Trump*, No. 25-cv-4480 (CRC), 2026 WL 1505646 (D.D.C. May 29, 2026) .............. 19

*Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321 (D.D.C. 2015)........................................ 17

*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013)........................................................ 12

*Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) ........................................... 12

*DSE, Inc. v. United States*, 169 F.3d 21 (D.C. Cir. 1999) .............................................................. 18

*\*Environmental Defense Fund v. FERC*, 2 F.4th 953 (D.C. Cir. 2021) ....................................... 12

*Freedom From Religion Found. v. Concord Cmty. Schs.*, 148 F. Supp. 3d 727 (N.D. Ind. 2015) ...................................................................................................................................................... 17

*Friends of the Earth v. United States Environmental Protection Agency*, No. 12-cv-0363, 2012 WL 13054264 (D.D.C. Apr. 11, 2012) .................................................................................... 13

*Gordon v. Holder*, 632 F.3d 722 (D.C. Cir. 2011) ....................................................................... 15

*Henkel v. Dep't of Educ.*, No. CV 24-1676, 2025 WL 2049267 (D.D.C. July 22, 2025) ............ 11

*League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135 (D.D.C. 2025) ................................................................................................................................................ 19

*\*League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) .............................................. 17

*Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C.) ....................................................... 17

*N. Am.'s Bldg. Trades Unions v. DOD*, 783 F. Supp. 3d 290 (D.D.C. 2025) .............................. 19

*Nat'l Endowment for Democracy v. United States*, 795 F. Supp. 3d 63 (D.D.C. 2025)............... 19

*Nat'l Trust for Historic Pres. v. NPS*, 821 F. Supp. 3d 62 (D.D.C. 2026) ................................... 11

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009)....................................................... 15

*Se. Fisheries Ass'n, Inc., v. Lutnik*, No. 26-cv-1533 (RC), 2026 WL 1430499 (D.D.C. May 21, 2026) ................................................................................................................................................ 19

*SEC v. Chenery*, 318 U.S. 80 (1943) .................................................................................. 9

*Sierra Club v. DOT*, 125 F.4th 1170 (D.C. Cir. 2025) ...................................................... 11

*Sierra Club v. FERC*, 827 F.3d 59 (D.C. Cir. 2016) ...................................................... 11

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ...................................................... 16

*U.S. Fish & Wildlife Serv.*, 145 F.4th 1144 (D.C. Cir. 2025)........................................... 16

*WildEarth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir.2013) ...................................... 12

**Statutes**

Park Service Organic Act, Pub L. No. 87-286, 75 Stat. 586 (1961)................................................ 7

**Other Authorities**

*Fact Sheet: President Donald J. Trump Celebrates American Greatness*, White House (Jan. 30, 2026) ................................................................................................................................ 14

Joey Garrison, *Trump says he may keep UFC arena on White House lawn permanently*, USA Today (June 3, 2026) .......................................................................................................... 15

Ryan Harkness, *UFC announces White House weigh-ins at Lincoln Memorial, 'tons of stuff to do'*, SB Nation (Mar. 13, 2026) ................................................................................................ 2

Melina Khan, *America250 and Freedom 250 celebrate the same thing. But they are different*, USA Today (June 2, 2026) ........................................................................................................ 14

Dominique Moody and Sophia Barnes, *White House UFC fight construction underway: See the towering 'Claw' in DC*, NBC Washington (May 28, 2026) ................................................... 15

Scott Nover, *White House will be closed to reporters during UFC fight — unless UFC lets them in*, Wash.Post (June 9, 2026) .............................................................................................. 8

National Park Service, Lincoln Memorial, Operating Hours & Seasons ...................................... 4

Josh Peter, *CBS won't air UFC White House event, viewers will need Paramount+ to watch*, USA Today (June 10, 2026) ...................................................................................................... 7

UFC, UFC Freedom 250, https://www.ufc.com/freedom250#schedule........................................ 2

Victor Reklaitis, *The company behind the White House's UFC event says rivals 'would kill' for the opportunity. Critics say that's a problem*, Morningstar (May 30, 2026) ........................... 14

Joe Walsh, *Trump says he'll host a UFC fight on White House grounds next year*, CBS News (July 4, 2025) .......................................................................................................................... 14

**Regulations**

36 C.F.R. § 7.96 ........................................................................................................... 2, 6

**INTRODUCTION**

On Sunday, absent this Court's intervention, the President's allies at the UFC will profit from the first private, for-profit sporting event ever held on White House grounds. The event will feature million-dollar VIP packages, brand placement opportunities adjacent to the Lincoln Memorial, and an exclusive broadcast on the President's favored streaming service. Such a volcano of corruption, if allowed to go forward, will mark an inflection point in American history. The images it generates will one day appear in the history books—and not in the chapters about times remembered fondly. Unable to defend this spectacle for what it is, Defendants elect to defend something else entirely. They call the event a "celebration of the 250th Anniversary of American Independence" and an "official act" of the President immune from the Court's scrutiny. But the evidence on display to the American people refutes that story.

Defendants apparently recognize that they are violating the law—soon after this case was filed, Defendants made several changes to their plans. Less than two weeks ago, the UFC's plan included shutting down the Lincoln Memorial to the public so fighters could make walk-outs from the Memorial chamber. But after Plaintiffs filed suit, Defendants committed not to authorize that particular abuse of that sacred space (before backtracking from that concession earlier today). And just days ago, President Trump (for the second time) proposed making the "Claw" a permanent fixture of the capital skyline. But after Plaintiffs filed suit, the President's representatives promised to begin dismantling the structure on Monday morning.

Still, preliminary relief against Sunday's main event is warranted. Plaintiffs are likely to prevail on the merits—they have standing, and Defendants' slapdash efforts to insulate UFC Freedom 250 from judicial review are meritless. Plaintiffs acted promptly as soon as their injuries accrued and the full scope of the event's lawlessness became clear. And the equities favor enjoining the corrupt spectacle now, before the damage is done for good.

1

## ARGUMENT

**I.     The Court should prohibit Defendants from authorizing the UFC's use of the Lincoln Memorial chamber.**

**A.     The Court should require defendants to honor the representation in their June 9 briefing that they have authorized the UFC to use only "the approach way" to the Lincoln Memorial, not its chamber.**

Plaintiffs' opening brief principally challenged Defendants' authorization of the Lincoln Memorial's use on the ground that such authorization was not a proper exercise of the America250 Exemption, 36 C.F.R. § 7.96(g)(8). The reporting prior to this litigation indicated that face-offs, weigh-ins, or both would be "at the Lincoln Memorial," or words to that effect.[1] Plaintiffs understood "at the Lincoln Memorial" to mean or encompass the Memorial as defined by 36 C.F.R. § 7.96(g)(3)(ii)(B): the chamber itself and top flight of steps.[2] As the first Richardson Declaration concedes, normally, no sporting events are allowed to use those spaces under 36 C.F.R. § 7.96(g)(3)(i). Richardson Decl. ¶ 5. Plaintiffs accordingly inferred, in preparing this lawsuit, that the UFC's use of the Memorial had to be premised on the America250 Exemption, the only legal basis under which Defendants could authorize a special event to use the chamber or top steps.

In their brief filed yesterday evening, Defendants respond that Plaintiffs have misunderstood, and represent that "proposed event is not within the area" subject to the Lincoln

---

[1] *See, e.g.*, Ryan Harkness, *UFC announces White House weigh-ins at Lincoln Memorial, 'tons of stuff to do'*, SB Nation (Mar. 13, 2026), https://www.msn.com/en-us/sports/mma_ufc/ufc-announces-white-house-weigh-ins-at-lincoln-memorial-tons-of-stuff-to-do/ar-AA1YxIvu.

Of note, although Defendants deny that the UFC will be holding fighter face-offs at the Memorial, Opp'n 20, the UFC does not appear to have gotten the memo: Its blurb for the Press Conference currently reads "Don't miss the UFC Freedom 250 athletes live on stage as they face off for the first time." UFC, UFC Freedom 250, https://www.ufc.com/freedom250#schedule.

[2] The regulation defines "Lincoln Memorial" to mean "that portion of the park area which is on the same level or above the base of the large marble columns surrounding the structure, and the single series of marble stairs immediately adjacent to and below that level."

Memorial use restriction. Opp'n 12. The first Richardson declaration likewise represents that the UFC is authorized to use only "the area between the Lincoln Memorial and the reflecting pool" for its Friday press conference, not the chamber itself. Richardson Decl. ¶ 16 (ECF No. 11-2 at 5). The Richardson declaration notably cites the same use restrictions that led Plaintiffs to infer that UFC Freedom 250's use of the Memorial chamber was pursuant to the America 250 Exemption. *Id.* (citing 36 C.F.R. § 7.96(g)(3)(ii)(B) & (E)).

Plaintiffs' counsel was pleased to encounter such a significant concession in Defendants' brief, as it meant that Plaintiffs would receive significant relief with respect to the UFC's use of the Memorial without the need for a TRO. Ward-Packard Decl. ¶ 5. A principal goal of this litigation has, since the start, been to block the UFC's illegal use of the Memorial chamber. *Id.* ¶ 4.

Earlier today, however, in reviewing Defendants' evidentiary submissions, Plaintiffs' counsel encountered a document dated May 30, 2026, and titled "GROUND PLAN – SHOW," which depicts the set-up for the press conference and face-offs. *See* Richardson Decl. Ex. C. at 22 (ECF No. 11-2 at 81); *see also* Ward-Packard Decl. ¶¶ 8–11. That site plan does not depict an event that will use only "the area between the Lincoln Memorial and the reflecting pool." To the contrary, it indicates that the plan is (or was as of May 30) for the event's fighters to emerge from the heart of the chamber directly in front of the iconic statute of Lincoln, then descend the steps to a stage set up in the plaza. *See id.* (Red arrow reading "ATHLETE PATH FROM ELEVATOR TO STAGE"). Such use of the Memorial chamber plainly constitutes using it for a sporting event, in violation of 36 C.F.R. § 7.96(g)(3)(i).

The same plan indicates that the steps and chamber will be blocked off by barriers, preventing public access. As the Lincoln Memorial is open to the public 24 hours a day every day

3

except Christmas,[3] closing the chamber off for purposes of the UFC event likewise constitutes using it for a sporting event, in a second violation of 36 C.F.R. § 7.96(g)(3)(i).

Based on the discrepancies between Defendants' representations to the Court and their evidentiary filings, Plaintiffs' counsel reached out to Defendants today at 1:20 p.m. ET to request clarification on (i) whether the UFC was authorized to start fighter walk-outs to the face-offs inside the chamber; and (ii) whether the UFC was authorized to close the chamber to the public. Ward-Packard Decl. ¶ 12. Defendants' counsel responded but did not substantially answer those questions; instead, at 5:41 p.m. ET today, Defendants filed the Supplemental Richardson Declaration. ECF No 12.

That declaration indicates that Richardson learned during a "site walkthrough" today that "UFC/TKO intends" to have each fighter arrive to the face-off stage via the Memorial chamber. Suppl. Richardson Decl. ¶ 6. The declaration has a lengthy discussion of camera permits but does not answer the pivotal questions (i) whether Defendants are authorizing the use of the Lincoln Memorial chamber for the UFC face-off, consistent with UFC's "inten[t]" or (ii) what authority such authorization is or would be based upon. The Supplemental Richardson Declaration also indicates that the UFC's use of the Memorial will result in its chamber's unscheduled closure to the public, pertinent evidence of use that Richardson does not claim to have obtained only today. *Id.* ¶ 8.

Plaintiffs respectfully submit that in the circumstances, the appropriate outcome is for the Court to order Defendants to honor their June 9 representation that the UFC will not be allowed to use the chamber because it may not be used for special events under the governing regulation. At

---

[3] *See* National Park Service, Lincoln Memorial, Operating Hours & Seasons, https://www.nps.gov/linc/planyourvisit/hours.htm.

a minimum, such an order should prohibit the use of the chamber for fighter walkouts. And the Court should also consider requiring that the Memorial chamber remain open to the public during the event—closure, in the circumstances of a monument that is always open, obviously constitutes use.

Defendants' conduct—submitting briefs and declarations that are contradicted by their own exhibit, then shifting positions and rationales when the inconsistency is called out—is highly irregular. In particular, under the *Chenery* doctrine, agencies are required to defend their decisions with reference to the actual rationales underpinning those decisions, not rationales contrived after the fact in response to litigation. Defendants' conduct has made it impossible for the Court to conduct a *Chenery* analysis here. The appropriate remedy is to grant Plaintiffs the relief promised yesterday in Defendants' own brief.

### B. Alternatively, the Court should grant a TRO against the use of the Lincoln Memorial chamber.

Alternatively, the Court should grant the TRO Plaintiffs previously requested with respect to the Lincoln Memorial. Plaintiffs' previous briefing, now bolstered by the concessions in Defendants' June 9 submissions, easily satisfies the likelihood of success requirement.[4] As set forth in their declarations, both Plaintiffs will suffer irreparable harm if the Lincoln Memorial

---

[4] The Court should reject out of hand Defendants' attempt to satisfy the America 250 Exemption by adding the Park Service to the Lincoln Memorial permit as a co-sponsor. *See* Opp'n 25. The Park Service obviously should not be allowed to side-step its own regulations by issuing permits to itself. The idea that the Park Service is the "executive department or agency" planning the press conference, such that the Exemption applies is, moreover, absurd on face given the facts. And that representation has hallmarks of a *post hoc* pretext invented in response to this lawsuit. Specifically Richardson indicates that she first issued a permit for the Memorial event to only "UFC/TKO" on May 20. Richardson Decl. ¶ 18. She reports that she was "later informed that the proposed permitted event would be co-sponsored by the NPS," but notably does not provide a date for that conversation or say who informed her. *Id.* ¶ 19. She then states that she added NPS to the permit only on June 7, which was one day *after* this case was filed. *Id.* ¶ 20.

chamber is exploited as a prop for fighter face-offs. And on the equities, none of Defendants' claimed harms to nonparties plausibly apply to the UFC's use of the Lincoln Memorial. The UFC can either move its press conference elsewhere, or have its fighters walk onto the stage without transiting via the Memorial chamber.

## II.    The Court should grant a TRO with respect to the UFC's South Lawn event.

Defendants try to paint this weekend's fight as no different than any other sporting event held on the White House Lawn. It is different: UFC Freedom 250 is a for-profit endeavor from which the President and his allies stand to profit. It is because of this fundamental corruption that Plaintiffs are entitled to preliminary relief against the Sunday night fights on the South Lawn.

### A.    Plaintiffs are likely to prevail on the merits of their claims against the South Lawn event.

#### 1.    Plaintiffs are likely to prevail on the merits of their claim that UFC Freedom 250 violates the Capital Region Regulation.

Defendants contend that the Capital Region Regulation (36 C.F.R. § 7.96) does not apply to the South Lawn uses for two reasons: first, because UFC Freedom 250 is being held for the President's "official purposes," Opp'n 23 (quoting Pub L. No. 87-286, 75 Stat. 586 (1961)); and, second, because those uses are supposedly under the control of the White House Office of the Executive Residence, not Defendants. Both arguments fail.

As a threshold point, the Capital Region Regulation facially applies to the South Lawn. The South Lawn is part of President's Park, and it falls within the definition of the "White House area" set forth in 36 C.F.R. § 7.96(g)(1)(iv).[5] Defendants do not argue otherwise. Accordingly, the

---

[5] "[A]ll park areas, including sidewalks adjacent thereto, within these bounds; on the south, Constitution Avenue NW.; on the north, H Street NW.; on the east, 15th Street, NW.; and on the west, 17th Street NW."

regulation's restrictions governing that area apply unless some other source of law preempts the regulation.

Defendants point to just one potential exemption: a provision of the Park Service Organic Act, which provides that "nothing done under [the Park Services's enabling legislation] shall conflict with the administration of the Executive offices of the President or with the use and occupancy of the buildings and grounds as the home of the President and his family and for his official purposes." Pub L. No. 87-286, 75 Stat. 586 (1961). For this provision to displace the Capital Region Regulation, however, Defendants need to establish that applying the permitting scheme to UFC Freedom 250 "conflict[s]" with "the administration of the Executive offices of the President or with the use and occupancy of the buildings and grounds as the home of the President and his family and for his official purposes."

Yet Defendants do not provide any conflicts analysis. Nor do they engage with any of Plaintiffs' overwhelming evidence that UFC Freedom 250 is not being held for the President's "official purposes," but rather is a private, for-profit commercial spectacle aimed at enriching the President's friends and allies. As described in Plaintiffs' opening brief, the event is privately funded; the UFC stands to benefit financially from million-dollar "sponsorship packages" and marketing fees; the entire event will be broadcast only to Paramount Plus paying subscribers (a point Dana White himself confirmed yesterday[6]); and the South Lawn is already prominently displaying branding from UFC's advertising partners—for instance, a large "Monster" energy drink banner is currently obstructing the public's view of the White House from the south:

---

[6] Josh Peter, *CBS won't air UFC White House event, viewers will need Paramount+ to watch*, USA Today (June 10, 2026) https://sports.yahoo.com/articles/cbs-wont-air-ufc-white-151848870.html.

7



Defendants engage with none of this. And the evidence of the UFC's total control over the event has only grown since Plaintiffs filed suit. Yesterday, for instance, the *Washington Post* reported that the White House will cede control of press access to the UFC on the day of the event.[7] In the face of facts like these, it beggars belief to argue that the UFC's uses and abuses of national parklands qualify as the President's "official purposes." Defendants had their opportunity to defend that impossible position in their brief. They understandably chose not to take it.

---

[7] Scott Nover, *White House will be closed to reporters during UFC fight — unless UFC lets them in*, Washington Post (June 9, 2026), *available at* https://archive.is/20260609202715/ https://www.washingtonpost.com/business/2026/06/09/white-house-will-be-closed-reporters-during-ufc-fight-unless-ufc-lets-them/.

Defendants' second argument, that relief is unavailable because Plaintiffs have not sued the Executive Office of the President, Opp'n 23, likewise fails. Again, the Capital Region Regulation applies to the South Lawn unless it its preempted by statute. And it requires Defendants not to authorize the UFC's disallowed uses except pursuant to a valid permit or applicable exemption. Plainly, the Court may grant relief requiring Defendants, parties to this lawsuit, to enforce their own regulation against the UFC.

To argue otherwise, Defendants rely on the Stanwich Declaration's laundry list of past special South Lawn events, which he says were not subject to the Regulation. ECF No. 11-1. But the analogies are foolish. UFC Freedom 250—a massive, privately run, and undisputedly profit-seeking endeavor—has nothing in common with the National Christmas Tree lighting ceremony, congressional picnics, a free Elton John concert or—obviously—the Easter egg roll. All those events were plausibly "official" because they were not motivated by gratuitous private profit-seeking. None came close to the physical scale of UFC Freedom 250. And several were held on the Ellipse, not the South Lawn, where the permitting regime is far more permissive. In any case, past uses are at most mildly probative as to the meaning of the Capital Region Regulation. Defendants are bound by the unambiguous words of the regulation they wrote. The Court should order them to follow it.

Defendants alternatively argue that the America250 Exemption applies to the South Lawn uses, so they could be allowed without permits. Opp'n 25. But it is far too late for that gambit. Under *SEC v. Chenery*, 318 U.S. 80 (1943), Defendants are required to defend their *actual* rationale for their authorization decision; they may not simultaneously invoke two conflicting alternatives and defend both. Having denied the Capital Region Regulation's applicability to the South Lawn on its face, Defendants may not resort to its exemptions as a back-up argument. In

9

any case, the America250 Exemption does not apply for all the reasons set forth in Plaintiffs'
opening brief, arguments Defendants studiously ignore.

> **2.**     **Plaintiffs are likely to prevail on the merits of their claim that the Claw's construction violates the Park Service Organic Act's congressional authorization requirement for "structures."**

Defendants do not dispute that under 40 U.S.C. § 8106, no "building or structure" may be
erected on the public grounds of the District of Columbia under the charge of the Park Service
except as expressly authorized by Congress. Instead, Defendants insist that the 92-foot-tall, 600-
ton "Claw" is not a "structure" because it is temporary. Opp'n 26–27. They reason that Congress
cannot have meant to ban other temporary structures, such as pavilions or tents. The problem for
Defendants is that Congress clearly meant to ban *something* other than buildings—if it had not,
the word "structure" would not be in the statute. The Court should decline Defendants' invitation
to read the word  "structure" out of the statute entirely, or read the word "permanent" into it.

In context, the most sensible meaning of "structure" is a temporary equivalent *to a
building*—the other term the statute restricts. So read, 40 U.S.C. § 8106 contains no surplusage
and has a logical scope and purpose: to preserve the monumental character and iconic sightlines
of the capital, while allowing erection of more mundane, unobjectionable, much smaller structures
like temporary tents. Applying this definition, the Claw is subject to the § 8106 restriction, because
it (and the arena currently being built inside it) are effectively temporary buildings. The tents,
pavilions, and ice rink Defendants invoke are easily distinguished on this reading of the statute;
none has remotely the effect of the Claw on the White House's monumental landscape. (And again,
past uses that were not litigated are not probative evidence for purposes of statutory or regulatory
construction).

Defendants argue that even if the Claw is illegal, there is nothing they can do about it. But
at the same time, they are comfortable assuring the Court that the Claw will come down on June

15. Opp'n 13.[8] And the claim that the Parks Service and Interior Department have no capacity to exercise any authority over the erection of buildings and structures on parklands is not plausible.

### B.      Plaintiffs are likely to establish standing.

#### 1.      Plaintiffs are likely to prove aesthetic and dignitary injuries.

That Plaintiffs are harmed by UFC 250 Freedom is beyond reasonable dispute. Defendants contend that Plaintiffs' declarations detail merely "incidental viewership" of the White House and Lincoln Memorial. Opp'n 19–20. But both Plaintiffs have articulated their "particularized connection" to those spaces. *See Nat'l Trust for Historic Pres. v. NPS*, 821 F. Supp. 3d 62, 70 (D.D.C. 2026). Both have lived in the District for most of their lives, and they frequently visit the areas near the While House and Lincoln Memorial and plan to in the future. Douglas Decl. ¶¶ 2, 3, 6; Romano Decl. ¶¶ 4, 5, 17. And they have already suffered the aesthetic injuries that underpin their standing.

Plaintiffs have also explained how, as individuals who care deeply about preserving the physical beauty and cultural sanctity of the national capital and its monuments, they will be harmed by the use of those for corrupt purposes. Douglas Decl. ¶¶ 4, 8, 12–16; Romano Decl. ¶¶ 5–16. These are precisely the particularized, concrete, and continuing harms that courts regularly find support aesthetic, emotional, and dignitary injury and, where relevant irreparable harm. *See Nat'l Trust for Historic Pres.*, 821 F. Supp. 3d at 69–70; *Henkel v. Dep't of Educ.*, No. CV 24-1676, 2025 WL 2049267, at *11 (D.D.C. July 22, 2025); *Sierra Club v. FERC*, 827 F.3d 59, 66 (D.C. Cir. 2016); *Sierra Club v. DOT*, 125 F.4th 1170, 1180–81 (D.C. Cir. 2025); *Ctr. for Sustainable*

---

[8] Given Defendants' inconsistent statements about their use of the Lincoln Memorial, Plaintiffs will monitor and confirm that Defendants abide by their commitment, and will alert the Court if they do not.

11

*Econ. v. Jewell*, 779 F.3d 588, 596–97 (D.C. Cir. 2015); *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305–06 (D.C. Cir.2013).

Defendants' reliance on *Environmental Defense Fund v. FERC*, 2 F.4th 953, 969–70 (D.C. Cir. 2021) (*EDF*) is misplaced. *See* Opp'n 19. In *EDF*, the plaintiff was a passive observer with no particularized connection to the land occasionally driving past a pipeline half a mile away. *EDF*, 2 F.4th at 970. Here, both plaintiffs have concrete, regular, purposeful connections to the affected spaces. Douglas is devoted to activism and organizing aimed at preserving the physical beauty and cultural sanctity of the national capital and its monuments and regularly attends protests in those specific spaces, and Romano is connected to the monuments as a veteran, and drives through the area regularly for work. Douglas Decl. ¶¶ 4–5; Romano Decl. ¶ 5.

Defendants attempt to dismiss Douglas's impending physical injuries and also argue that any injury is self-inflicted because she chose to visit the area. But this is not a case where the plaintiff has attempted to *manufacture* an injury. *See Clapper v. Amnesty International USA*, 568 U.S. 398, 402 (2013) (plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending."). But as Douglas's declaration makes clear, her impending physical injuries are real, and Douglas has visited and will continue to visit the National Mall and White House for protests—an exercise of First Amendment rights that predates this litigation and will continue after it is over. The presence of a legal violation that harms her during her otherwise-planned visits is not self-inflicted. Defendants' logic would perversely deny standing to anyone who uses public spaces for civic engagement.

### 2.    Plaintiffs are likely to satisfy causation and redressability.

Defendants' argument that Plaintiffs' alleged harms are not traceable to Defendants nor redressable in this suit is entirely based Defendants' assertion that the Capitol Region Regulation does not apply to Defendants because the South Lawn is under the control of the White House

Office of the Executive Residence, not Defendants. That argument is wrong, as set forth above. The UFC Freedom 250 event would not occur but for the Defendants' authorization, and an injunction from this Court will stop the event, and its commensurate harms, from ever occurring.

**C.      The UFC is not a necessary party.**

The UFC is not, as Defendants claim, a required party under Rule 19(a)(1)(B). *See* Opp'n 23–24. "To establish a cognizable interest for purposes of required joinder," UFC "must have not just any interest, but a 'legally protected' interest in the litigation." *Friends of the Earth v. United States Environmental Protection Agency*, No. 12-cv-0363, 2012 WL 13054264, at *5 (D.D.C. Apr. 11, 2012) (quoting *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 741 F. Supp. 2d 222, 232 (D.D.C. 2010)); *see also Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005) ("Under Fed. R. Civ. P. 19(a)(2), a party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action.") Here, UFC's only potential legal interest is based on its contract with the White House Office of Executive Residence ("EXR"), which Defendants have not attached to their briefing. That interest is entirely separate from the legal issues raised in this lawsuit regarding *Defendants'* obligations. If Defendants are enjoined, and that affects UFC's contract with EXR, UFC can separately bring a case against EXR for breach. Defendants do not cite one case suggesting that a government contractor is a necessary party in a case challenging agency action that might affect its contract with the defendant agency, much less its contract with a non-party agency. Courts regularly enjoin agency action without joining every government contractor potentially affected.

13

**D.      The equities favor preliminary relief to halt the corrupt exploitation of national monuments.**

**1.      Plaintiffs did not delay in filing this lawsuit.**

Plaintiffs did not delay in filing this lawsuit, as the government concealed the true nature of its event for months. At the beginning of the year, the White House asserted that it, not a private organization, was planning the fight.[9] Reporting similarly confirmed that the government in general, and Freedom 250 in particular, was organizing the event.[10] It was not until June 4 that a spokesperson for Freedom 250 confirmed that, despite the name, it had no role in organizing UFC Freedom 250.

This fundamentally changed the valence of the event. As Defendants correctly point out, the White House has often hosted events including sporting events. Opp'n 3–7. (Defendants do not identify any time the Lincoln Memorial has been used for sporting events. Opp'n 7–8.) The aesthetic and dignitary harms Plaintiffs face are not because an event is held at our national monuments, but because a private, for-profit event is held there. The discovery that UFC Freedom

---

[9] *Fact Sheet: President Donald J. Trump Celebrates American Greatness*, White House (Jan. 30, 2026) https://www.whitehouse.gov/fact-sheets/2026/01/fact-sheet-president-donald-j-trump-celebrates-american-greatness-with-the-freedom-250-grand-prix-of-washington-d-c/ (saying that President Trump was "planning events that showcase American greatness, including . . . a UFC fight at the White House.").

[10] *See, e.g.*, Joe Walsh, *Trump says he'll host a UFC fight on White House grounds next year*, CBS News (July 4, 2025), https://www.cbsnews.com/news/trump-ufc-event-white-house-next-year-dana-white/; Victor Reklaitis, *The company behind the White House's UFC event says rivals 'would kill' for the opportunity. Critics say that's a problem*, Morningstar (May 30, 2026), https://www.morningstar.com/news/marketwatch/20260530131/the-company-behind-the-white-houses-ufc-event-says-rivals-would-kill-for-the-opportunity-critics-say-thats-a-problem ("Freedom 250 organization . . . was set up by the Trump administration to help run activities for America's 250th anniversary, including the UFC event."); Melina Khan, *America250 and Freedom 250 celebrate the same thing. But they are different*, USA Today (June 2, 2026), https://www.usatoday.com/story/news/usa250/2026/06/02/america250-freedom-250-whats-the-difference/90367264007/ ("As part of the president's plans, Freedom 250 is organizing a UFC fight on the White House lawn").

250 was, in fact, not part of Freedom 250 confirmed that this was a money-making enterprise, and one that can and should be challenged.[11]

Moreover, the "Claw" that the President now wants to keep permanently became visible in just the past two weeks, and the President first raised the possibility of keeping it up permanently only a week ago.[12] Even if it was clear earlier that the government played no role in organizing event, the Claw itself was not.

After a spokesperson's June 4 confirmation that Freedom 250 played no role in the event, Plaintiffs filed suit within two days. But even if their suit could be considered delayed, "a delay in filing is not a proper basis for denial of a preliminary injunction." *Gordon v. Holder*, 632 F.3d 722, 724– 25 (D.C. Cir. 2011). Rather, "delay is but one factor in the irreparable harm analysis," *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009). Here, the timing of Plaintiffs' lawsuit does not affect their irreparable harm, because the irreparable harm—namely, a for-profit fight and associated actions—has not yet occurred. This makes the cases Defendants cite inapt. Opp'n 14– 15. Most of decisions they reference, *Animals v. Frizzell, Grundmann v. Trump*, *Open Top Sightseeing USA v. Mr. Sightseeing, LLC, and Lee v. Christian Coal. of Am., Inc.* are irrelevant because they concern delay showing mootness or lack irreparable harm. The remaining cases— *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.* and *Max-Planck-*

---

[11] The fact that EXR authorized the event does not change the analysis. Defendants' opposition does not credibly establish that EXR, or any other executive department, planned, organized, *and* executed UFC Freedom 250.

[12] Dominique Moody and Sophia Barnes, *White House UFC fight construction underway: See the towering 'Claw' in DC*, NBC Washington (May 28, 2026), https://www.nbcwashington.com/news/president-trump-politics/white-house-ufc-fight-construction-underway-see-the-towering-claw-in-dc/4109566/; Joey Garrison, *Trump says he may keep UFC arena on White House lawn permanently*, USA Today (June 3, 2026), https://www.usatoday.com/story/news/politics/2026/06/03/trump-ufc-arena-white-house-claw-permanent/90387950007/.

*Gesellschaft Zur Forderung Der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Rsch.*— fundamentally concern whether a delay affects the balance of equities, addressed below.

Finally, defendants claim that "even if Plaintiffs thought the Freedom 250 entity was in charge, nothing prevented them from bringing their four claims (Counts II through V) that do not hinge on which entity is in charge." Opp'n 16. This misunderstands the case. It is the for-profit nature of the event that creates the aesthetic and dignitary harms that confer standing, which is separate from any cause of action. Plaintiffs would be premature in bringing suit, even if the government's violation of the law was obvious, until the corruption was as well.

### 2.       Plaintiffs will suffer irreparable harm absent preliminary relief.

Defendants do not contest that the aesthetic and dignitary harms that Plaintiffs face can, and often are, irreparable. *See* Opp'n 16. Rather, they argue that these harms are fleeting, and if the events (legal or not) cause Plaintiffs harm, they can just look away. As a practical matter, they cannot. Romano frequently travels along the National Mall for work, while Douglas plans to protest in the same area that weekend. Mot. at 27. It is no response for the government to say that Plaintiffs can avoid harm by stopping working or curtailing their rights to protest.

Even if Plaintiffs could avoid the harm without affecting their work or right to speech, they have no obligation to do so: courts have long recognized that plaintiffs experience aesthetic harms even at places they travel to recreationally. *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (recognizing standing for "recreational" interests); *U.S. Fish & Wildlife Serv.*, 145 F.4th 1144, 1157 (D.C. Cir. 2025) (holding that researcher who searched for an animal only while on vacation had standing).

But there is a deeper sense in which this event cannot be avoided. This the first time the White House and Lincoln Memorial will be used for a for-profit event in which both the President and his allies stand to gain personally. Public attention during the event will be enormous, and the

reputational harm to the monuments—turning them from national symbols into commercial commodities—will last long beyond the event itself. Even temporary actions can cause permanent harm, and courts frequently find such harm to be irreparable. *See, e.g.*, *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 231 (D.D.C.), *vacated on other grounds*, 146 S. Ct. 628 (2026) (enjoining temporary sanctions because of permanent reputational harm); *Freedom From Religion Found. v. Concord Cmty. Schs.*, 148 F. Supp. 3d 727, 741 (N.D. Ind. 2015) (enjoining live religious performance); *Am. C.L. Union of Illinois v. City of St. Charles*, 794 F.2d 265, 274 (7th Cir. 1986) (affirming injunction of temporary religious display).

### 3.   Plaintiffs have established that the balance of equities and public interest favor preliminary relief.

Between Defendants and Plaintiffs, the balance of equities and public interest tip decidedly in the latter's favor, as there is no public interest in letting the government break the law. *See League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* (internal quotations omitted). *See also Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015) ("Forcing federal agencies to comply with the law is undoubtedly in the public interest."). Moreover, there is no burden for the government to comply with the law here, because a temporary restraining order would simply direct the government *not* to do something, namely, proceed with permitting a massive series of events at the White House and Lincoln Memorial.

Defendants' response is unconvincing, and concerning the face-off at the Lincoln Memorial, non-existent. *See* Op. 17–18. The government has no interest in hosting the face-off, which for all the reasons described above, is illegal, at a particular location. To the extent

17

Defendant is determined that the face-off proceed, it can do so elsewhere. On the fight on the White House lawn itself, Defendant argues that the public interest weighs in its favor because of the work it has done to organize and promote the event, including hiring staff, promoting ticket sales, and securing the grounds. Opp'n 18. But this creates a perverse incentive: the more work the government does in violation of the law, its argument goes, the greater the public interest in letting it do so. Defendants do not gain a public interest in their lawbreaking simply because they have put great effort into it.

Nor is the UFC's financial investment a valid consideration, because the UFC itself is part of the corrupt bargain at issue here. On the interests of the fighters themselves, Defendants simply speculate without any evidence that were the event canceled, they would continue cutting weight to the harm of their own health. Opp'n 13. More is required to tilt the balance of equities.

This leaves the fans, whom Defendants argue will be inconvenienced if the event is moved or rescheduled. Opp'n 17. To be abundantly clear, Plaintiffs' concern is not with MMA fans, who are quite literally innocent bystanders, but with the corruption of this event. To the extent this Court believes that fans would be unduly harmed by enjoining defendants from proceeding with the fight, it can prohibit Defendants' planned, illegal walkout from the Lincoln Memorial without upsetting the fight the following day.

### E.   The Court should impose only a nominal bond.

Defendants have requested an extraordinary surety bond to which they are not entitled. Opp'n 31. Rule 65(c) vests "broad discretion in the district court to determine the appropriate amount of an injunction bond." *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). In cases enjoining agencies or officers of the federal government, courts in this District have historically waived the bond requirement because requiring a substantial bond "as a condition of obtaining an injunction against unlawful executive action . . . would risk deterring other litigants

18

from pursuing their right to judicial review of unlawful executive action" and "contravene the interests of justice." *See, e.g.*, *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 224 (D.D.C. 2025) (collecting cases); *N. Am.'s Bldg. Trades Unions v. DOD*, 783 F. Supp. 3d 290, 315 (D.D.C. 2025); *Nat'l Endowment for Democracy v. United States*, 795 F. Supp. 3d 63, 73 (D.D.C. 2025). Recently, rather than waiving the bond requirement altogether, judges in this district have typically required public-law plaintiffs to post only nominal bonds. *See Se. Fisheries Ass'n, Inc., v. Lutnik*, No. 26-cv-1533, at \*13 (RC), 2026 WL 1430499 (D.D.C. May 21, 2026) (imposing $100 bond because "imposing a significant bond . . . would unduly burden Plaintiffs, impair their ability to seek judicial relief, and chill access to justice."); *Accountability NOW USA v. Griess*, No. 26-cv-1385 (RDM), 2026 WL 1533402, at \*10 (D.D.C. June 1, 2026) (imposing $1.00 bond); *Beatty v. Trump*, No. 25-cv-4480 (CRC), 2026 WL 1505646, at \*44 (D.D.C. May 29, 2026) (imposing $1.00 bond). This Court should do the same, and require only a nominal bond of $1.00.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order that:

a. temporarily restrains or preliminarily enjoins Defendants from authorizing or otherwise allowing the organizers of UFC Freedom 250 to use the South Lawn as the venue for any sporting event, including the cage fights scheduled for June 14, 2026;

b. temporarily restrains or preliminarily enjoins Defendants from authorizing or otherwise allowing the organizers of UFC Freedom 250 to use the Lincoln Memorial as the venue for any sporting event, including the pre-fight face-offs and press conference scheduled for June 12, 2026, and directs Defendants to abide by their commitment to the Court made in their June 9, 2026 filing about their use of the Lincoln Memorial;

19

c.  temporarily restrains or preliminarily enjoins Defendants from authorizing or otherwise allowing the organizers of UFC Freedom 250 to erect structures on the South Lawn, including in particular the structure known as "the Claw," and directing Defendants to take all steps necessary to ensure that further construction ceases entirely pending further order of the Court; and

d.  grants such other and further relief as the Court deems just and proper.

Dated: June 10, 2026                            Respectfully submitted,

                                                /s/ Brendan Ballou

                                                **PUBLIC INTEGRITY PROJECT**
                                                Brendan Ballou
                                                D.C. Bar No. 241592
                                                Samuel T. Ward-Packard
                                                D.C. Bar No. 90005484
                                                ballou@publicintegrityproject.org
                                                sam@publicintegrityproject.org

                                                *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that this document will be served on the Defendants in accordance with Federal Rule of Civil Procedure 5.

/s/ Brendan Ballou
Brendan Ballou